UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 1:06CR 52 RWS |
| | ) | |
| GARY E. SUTTON, | ) | |
| | ) | |
| Defendant(s). | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The defendant was originally charged by Indictment with Count I - Being a Felon in Possession of Ammunition; and Count II - Being a Felon in Possession of Firearms and Ammunition. The defendant filed Defendant's Motion to Suppress Physical Evidence (Document #37). The government filed Government's Response to Defendant's Motion to Suppress Physical Evidence (Document #41). An evidentiary hearing followed. After the evidentiary hearing, the government filed a Superseding Indictment charging defendant in a third count with Being a Felon in Possession of Firearms. At the arraignment on the Superseding Indictment, the defendant stated he did not believe that he needed to file any further pretrial motions.

In his Motion to Suppress Physical Evidence, the defendant alleges that any evidence seized from the defendant's person or from the premises known as Route 3, Box 3691, Piedmont, Missouri, should be suppressed because it was seized as a result of an unlawful search conducted without a valid search warrant. The defendant alleges further that the search warrant was not supported by probable cause to believe that contraband would be found on the premises. The defendant further alleges that the search warrant was not particular as to the place to be searched and/or the items to be seized.

**Factual Background**

In March, 2006, ATF Special Agent David Diveley was contacted regarding the possibility that a Wayne County, Missouri, resident was a convicted felon in possession of firearms. He made contact with Edith "Bernice" Kimes regarding his investigation. She told Diveley that her father, Clarence Eugene Sutton, had died of natural causes on February 14, 2006. Clarence Sutton was buried on February 17, 2006. After the funeral, a man named Donnie Provance took fourteen long guns and one pistol from Clarence Sutton's house to Mrs. Kimes's residence.

On March 11, 2006, Mrs. Kimes received a telephone call from Gary Sutton. He told her that Provance was going to come back to her house and retrieve the firearms so they could be cleaned and oiled. Provance did drive over to Kimes's house and get the guns. Kimes told these facts to Diveley on March 23, 2006.

On the same date, Diveley also talked with Hunter Sutton. He is the grandson of Clarence Sutton. Hunter said that he was at Gary Sutton's residence on March 22, 2006, and saw the fourteen long guns and one pistol in Gary Sutton's bedroom. Hunter Sutton recognized the firearms as the same ones formerly owned by Gary Sutton's father. Clarence Sutton had originally promised two of the firearms to Hunter.

Diveley determined that the Gary Sutton residence had an address of Route 3, Box 3691, Piedmont, Missouri. He described the physical location of the house in a search warrant affidavit. Diveley also included in the affidavit some of the prior felony convictions of Gary Sutton and much of the information set out above.

This search warrant application was submitted by Diveley to Magistrate Judge Lewis Blanton on March 27, 2006. Diveley swore that the facts in the affidavit and application were true. The judge then issued the search warrant.

On March 30, 2006, at 4:35 P.M., Diveley and other law enforcement officers executed the search warrant. As Agent Diveley and other officers approached the door of the house, Brittany Henson met him at the door. Diveley identified himself as an ATF agent and advised Ms. Henson that the officers had a search warrant for the house and asked if there was anybody else inside the house. Ms. Henson said her two children were there. Diveley asked them all to step out of the house, which they did. Then the officers conducted a security sweep to verify that nobody else was there.

The house was searched. Several items were seized, including several rounds of ammunition, a gun magazine, drug paraphernalia, marijuana cigarettes and papers reflecting "indicia of ownership."

## **Probable Cause**

The defendant argues first that the Search Warrant was issued without probable cause.

The Supreme Court has defined probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332 (1983).

The standard to be used by a judge reviewing the decision to issue a search warrant is different from the standard to be used by the judge who issues the search warrant. As the Supreme Court stated in Gates more fully, Id.:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed. Jones v. United States, 362 U.S., at 271, 80 S.Ct., at 736.

\* \* \*

Probable cause is

> a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules. Informants' tips doubtless come in many shapes and sizes for many different types of persons. As we said in <u>Adams v. Williams</u>, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972): "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." Rigid legal rules are ill-suited to an area of such diversity.

<u>Gates</u>, 462 U.S. at 232, 103 S.Ct. at 2329.

The Supreme Court continued, 462 U.S. at 231, 103 S.Ct. at 2328, quoting from <u>Brinegar v. United States</u> (citation omitted), that the probable cause standard is a "practical, nontechnical conception" and "In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual considerations of everyday life on which reasonable and prudent men, not legal technicians, act."

The sworn affidavit by Agent Diveley relates that the defendant was convicted of the felony of Possession of Burglary Tools in 1981, setting out the exact date, the court where the conviction took place and the case number. The affidavit continues with similar information about Mr. Sutton's 1989 conviction for Assault in the First Degree and the 1996 conviction for Murder in the Second Degree. The affidavit continues that the defendant's father, Clarence Eugene Sutton, died on February 14, 2006. Following Clarence Eugene Sutton's funeral, Donnie Provance took fourteen long guns and one handgun to the residence of Clarence Eugene Sutton's sister, Edith

- 5 -

"Bernice" Kimes. On March 11, 2006, Ms. Kimes received a telephone call from the defendant, Gary Sutton. Mr. Sutton told Ms. Kimes that Donnie Provance was going to come to her house and pick up the guns. The defendant told Ms. Kimes that Provance was to clean and oil the guns. Later that day, Provance came to the Kimes house and retrieved the guns.

On March 23, 2006, Agent David Diveley, the affiant, interviewed the nephew of the defendant and the grandson of the decedent, Clarence Eugene Sutton, who told Agent Diveley that Hunter Sutton was at Gary Sutton's residence on March 22, 2006, and Hunter Sutton observed fourteen long guns and one handgun in Gary Sutton's bedroom. The affidavit continues that Hunter Sutton recognized the guns as formerly belonging to Clarence Sutton because Hunter Sutton told Agent Diveley that he, Hunter Sutton, was promised the 20 gauge, side-by-side, shotgun and the .22-250 rifle by his grandfather, Clarence Sutton.

The affidavit then described the location of what it called the "Sutton residence."

The affidavit continued that Agent Diveley knew from his training and experience "that people that possess firearms also possess ammunition, gun cleaning supplies and notes, documents and receipts reflecting the acquisition and disposition of firearms."

The affidavit concluded that Agent Diveley had probable cause to believe that on the premises known as the Gary E. Sutton, Rural Route 3, Box 3691, Piedmont, MO [residence] were the "aforementioned firearms, ammunition, notes, documents, receipts, and other indicia reflecting acquisition and disposition of firearms, and paperwork reflecting the Sutton residency at Route 3, Box 3691, Piedmont, MO...."

The information in the affidavit indicated that the defendant, Gary Sutton, took care of getting the firearms cleaned and oiled. It was the grandson of Clarence Sutton, Hunter Sutton, who told Agent Diveley that he was at Defendant Gary Sutton's residence on March 22nd and observed fourteen long guns and one handgun in Gary Sutton's bedroom. He recognized these weapons as formerly belonging to his grandfather, Clarence Sutton. Clarence Sutton had promised him two of the long guns. The search warrant contained the finding by the issuing judge that the judge was satisfied that the affidavit established probable cause that the property described in Exhibit B attached to the warrant was concealed on the premises described in attached Exhibit A.

The court finds that the issuing judge had "'a substantial basis ... for conclud[ing]' that probable cause existed." <u>Gates</u> at 462 U.S. 238, 103 S.Ct. 2332.

The court realizes that the judge who issued the search warrant and who is the reviewing judge is the same. This matter of adequacy of probable cause will be

considered by the district judge to whom the case has been assigned, who will conduct a de novo review of this Report and Recommendation.

## **Particularity**

The defendant urges further that the evidence seized from the execution of the search warrant must be suppressed, in that the warrant was not particular as to the place to be searched and/or the items to be seized.

Obviously, from a review of the application, affidavit and search warrant itself, the location of the residence is particularly described. What about the items to be seized? The items which were seized and on which the first two counts of the indictment were based were ammunition. In Exhibit B listing items to be seized, there is no mention of ammunition. The definition of firearm contained in Title 18 § 921.(a)(3) does not include ammunition. Ammunition has its own definition listed at § 921.(a)(17)(A).

Agent Diveley testified that the ammunition which was seized, listed at items 1 and 2 on the search warrant return, were found in a china cabinet. They were not in plain view before the drawer of the china cabinet was opened. The ammunition was in the drawer and the .380 ammunition was in a box in the drawer marked as .380 ammunition. The three rounds of .243 ammunition were in the same drawer but not in

the box. Agent Diveley testified that he had information prior to the execution of the search warrant that there were guns in the home along with ammunition. However, ammunition was not listed in Exhibit B.

Exhibit B does list a 20 gauge, side-by-side, double-barrel shotgun and a .22-250 rifle, as well as "any other firearms possessed in violation of Title 18, U.S.C., § 922(g)(1)."

The question arises by what authority did the officers open a drawer and find the ammunition when Exhibit B gave them authorization to search for long guns? Obviously, long guns would not be found in the drawer of a cabinet. Should the ammunition be suppressed as seized without authorization?

In United States v. Nichols, 344 F.3d 793 (8th Cir. 2003), the Court of Appeals for the Eighth Circuit affirmed the district court's denial of the defendant's motion for the suppression of evidence obtained from the search of his residence. Mr. Nichols was charged with being a felon in possession of a firearm. Previously, a search warrant was issued to search for cocaine and drug paraphernalia at his residence. When the search warrant was being executed, among items seized by the officers were weapons. In his appeal, the defendant claimed that the officers exceeded the scope of the warrant by seizing items, specifically guns, not listed in the warrant. The Nichols court quoted from United States v. Schmitz, 181 F.3d 981, 988 (8th Cir. 1999), to the effect that "A lawful search extends to all areas and containers in which the object of the search may

be found." Three guns were found under Nichols's mattress. The Court found that while the search warrant did not authorize the officers to look for firearms, it did mandate the search for cocaine and drug related equipment. The Court concluded, "Given the object of the search, it was not unreasonable for the officers to look under Nichols's mattress." Nichols, 344 F.3d at 799.

Besides the two long guns claimed by Hunter Sutton, Exhibit B attached to the search warrant authorized the seizure of "4. Notes, documents and receipts reflecting the acquisition and disposition of firearms. 5. Notes and indicia reflecting the SUTTON residency at Route 3 Box 3691, Piedmont, Missouri." In view of the opinion expressed below, that the circumstances of this case justified a search for the handgun identified in the affidavit as present in the defendant's bedroom, the officers executing the search warrant on the Sutton residence were permitted to search wherever notes, documents and receipts reflecting the acquisition and disposition of firearms and notes and indicia reflecting the SUTTON residency at Route 3 Box 3691, Piedmont, Missouri, as well as the handgun might be found. Consequently, they were permitted to search the drawers of the cabinet.

The Eighth Circuit in United States v. Gamboa, 439 F.3d 796 (8th Cir. 2006), quoted from United States v. Hughes, 940 F.2d 1125, 1127 (8th Cir. 1991), again to the effect that "A lawful search extends to all areas and containers in which the object of the search may be found." The Gamboa court borrowed a colorful illustration of that

last statement from the Seventh Circuit opinion in United States v. Evans, 92 F.3d 540, 543 (7th Cir. 1996):

> If they are looking for a canary's corpse, they can search a cupboard, but not a locket. If they are looking for an adolescent hippopotamus, they can search the living room or garage but not the microwave oven.... It seems to us that a car parked in a garage is just another interior container .... If, as in this case, the trunk or glove compartment is not too small to hold what the search warrant authorizes the police to look for, they can search the trunk and the glove compartment.

As summarized by the Gamboa case, drawing on Evans, when the officers were looking for "notes, documents and receipts reflecting the acquisition and disposition of firearms" and "notes and indicia reflecting the SUTTON residency," they were justified in opening the drawers of the china cabinet. When they opened the drawer and saw the ammunition and understanding that the defendant was a convicted felon and not permitted to possess firearms or ammunition, under the plain view doctrine, officers may seize an item if they have a lawful right of access to the item seized and the object's incriminating nature is immediately apparent. United States v. Nichols, 344 F.3d at 799.

The seizure of the ammunition under the plain view doctrine was legal and the ammunition should not be suppressed.

There is an alternative justification for seizure of the ammunition.

The affidavit at paragraph 7 recites that the weapons taken to the Bernice Kimes house included fourteen long guns and one handgun.

Hunter Sutton told Agent Diveley, as related in paragraph 9 of the affidavit, that when he was at Gary Sutton's home on March 22, 2006, he observed fourteen long guns and one handgun in Gary Sutton's bedroom and Hunter Sutton recognized that these were the guns which had belonged to his grandfather. If the officers were entitled to look for a handgun, they would have been entitled to open the drawers of the cabinet.

Paragraph 11 out of the affidavit refers to the practice of people possessing firearms and ammunition for long periods of time.

Paragraph 12 states that people who possess firearms also possess ammunition, gun cleaning supplies and notes, documents and receipts reflecting the acquisition and disposition of firearms.

Paragraph 13 contains Agent Diveley's statement that he had probable cause to believe that on the Gary Sutton premises were the "aforementioned firearms, ammunition...."

The question is whether the inclusion of ammunition in many parts of the affidavit is sufficient to particularize the search warrant so that ammunition could be searched for and seized when observed in a place where the officers had a right to search when they were executing the search warrant?

"The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is

unconstitutional." Massachusetts v. Sheppard, 468 U.S. 981, 988, 104 S.Ct. 3424, 3428 (1984). In Rickert v. Sweeney, et al, 813 F.2d 907 (8th Cir. 1987), the Court suppressed evidence seized by the IRS because the warrant was not sufficiently particular. The affidavit in that case did provide the particularity required. The Rickert Court stated, "An affidavit may provide the necessary particularity for a warrant if it is either incorporated into or attached to the warrant. (citations omitted) Sufficient particularity may also be provided even if the affidavit is merely present at the search." 813 F.2d at 909.

In Massachusetts v. Sheppard cited earlier, the wrong warrant form was used because it was a weekend, the court was closed and the detective used an old warrant form seeking the seizure of controlled substances instead of tax records, which was what the IRS was seeking. The opinion in Sheppard was issued the same day that United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, was issued. As in Leon, the Supreme Court in Sheppard found that although the judge made a mistake, the officers acted in good faith and found that the exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges. Gates, 462 U.S. 213, 263, 103 S.Ct. 2317, 2346. The Court found that although the warrant itself was too broad, the affidavit accompanying the warrant was not incorporated into the search warrant. The Supreme Court found that apart from the good faith of the officers executing the search warrant and, thus, preserving the validity of the search, "Sheppard

[the convicted petitioner] admits that if the judge had crossed out the reference to controlled substances, written 'see attached affidavit' on the form, and attached the affidavit to the warrant, the warrant would have been valid." Id. at 991, 104 S.Ct. at 3429 n. 7.

The face of the warrant to search the Sutton residence attaches Exhibit B which lists the two weapons claimed by Hunter Sutton, the 20 gauge, side-by-side, double barrel shotgun and the .22-250 rifle. Exhibit B also includes "[a]ny other firearms possessed in violation of Title 18, U.S.C., Section 922(g)(1)," "[n]otes, documents and receipts reflecting the acquisition and disposition of firearms" and finally, "[n]otes and indicia reflecting the SUTTON residency at Route 3 Box 3691, Piedmont, Missouri." There is no specific mention of ammunition.

In the Rickert case cited earlier, the government had asked at the hearing on the motion to suppress that the affidavit supporting the search warrant be disclosed to the defendant. The hearing Court specifically refused to do that. In Rickert, the Court of Appeals found that the search warrant was overbroad but that the affidavit would have properly limited the discretion of the agents. The Rickert court also provided another way in which the warrant might be sufficiently limited and that was by disclosure of the affidavit to the defendant, even after the matter had been up on appeal:

> Unless the district court discloses the affidavit to Rickert and his companies, the court must declare the entire warrant invalid for lack of particularity and order return of all the seized material.

If the affidavit is disclosed to Rickert, the court is further directed to determine which items were seized within the scope of the affidavit's probable cause.

813 F.2d at 909-910.

The items within the scope of the affidavit's probable cause are admissible and should not be suppressed. United States v. Fitzgerald, 724 F.2d 633, 637 (8th Cir. 1983)(en banc); United States v. Green, 250 F.3d 471, 476-77 (6th Cir. 2001). Because the affidavit obviously has been provided to the defendant and his attorney in the present case, the search warrant is particularized in accordance with the information in the affidavit. The Court has already recited the items which the affidavit sought to search for, thus limiting the search, including specifically the handgun identified as present in the defendant's bedroom shortly before the search warrant was issued.

Finally, on the question of particularity of the warrant, the Eighth Circuit in United States v. Dockter, 58 F.3d 1284, 1288 (8th Cir. 1995), drawing and quoting from Rickert, stated, "'Inclusion of a statutory reference can sufficiently limit the scope of a search and thus provide the necessary particularity.' Rickert v. Sweeney, 813 F.2d 907, 909 (8th Cir. 1987)." The Dockter court found that Attachment II of the warrant specifically sought seizure of

> "[f]irearms and ammunition," along with "[a]ny and all other instrumentalities, substances or documents which are evidence of violation of ... Title 18 U.S.C. § ... 922...." (Schulze's Addend. at 17.) <u>This explicit reference to firearms and ammunition, along with the statutory reference relating to possession of firearms or ammunition by a</u>

<u>felon, sufficiently limited the scope of the search to make it constitutionally permissible and not a general exploratory search.</u> (emphasis added)

In the case at hand, in accordance with the quotations from <u>Dockter</u> above, this court finds that it is clear that the affidavit and warrant seek to authorize the seizure of items illegally possessed by a convicted felon in violation of 18 U.S.C. § 922. Exhibit B attached to the search warrant specifically names the 20 gauge shotgun and the .22-250 rifle, as well as any other firearms possessed in violation of Title 18, U.S.C., Section 922(g)(1). The explicit reference to specific firearms and any other firearms possessed in violation of the specifically cited statute, Title 18, U.S.C., Section 922(g)(1), provides the particularity for the seizure of a handgun identified as present in the residence by Hunter Sutton. The officers were permitted to search for the handgun wherever a handgun could likely be found. The drawer of the cabinet is such a place.

## **Other Objections to the Search**

Without offering any substantiation, defendant alleges in his Motion to Suppress Physical Evidence that the "affidavit contained materially false statements reflecting the affiant's bad faith in applying for the search warrant." As the government points out in its response, in order to obtain a hearing on a motion to go behind an affidavit on the basis of materially false statements reflecting bad faith, the defendant's assertions must be more than conclusory. <u>Franks v. Delaware</u>, 438 U.S. 154, 171, 98

S.Ct. 2674 (1978). The defendant's motion must amount to a substantial preliminary showing of deliberate falsehood or a reckless disregard for the truth and must be accompanied by an offer of proof. When such proof is not offered that an affiant deliberately lied or recklessly disregarded the truth, a Franks hearing is not required. United States v. Rodriguez, 414 F.3d 837, 842 (8th Cir. 2003). The defendant has made no such substantial preliminary showing. Thus, the allegation that the affidavit contained materially false statements reflecting the affiant's bad faith is without merit, is denied, and the court finds that the defendant is not entitled to a Franks hearing.

The defendant also charges that the officers did not announce their identity and authority. That allegation is incorrect. Agent Diveley testified that he identified himself as David Diveley, an agent with the Bureau of Alcohol, Tobacco and Firearms. He told Ms. Brittany Henson that the officers had a search warrant.

**IT IS, THEREFORE, RECOMMENDED** that the Defendant's Motion to Suppress Physical Evidence (Document #37) be denied.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(l), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of August, 2006.